NOT FOR PUBLICATION (Doc. No. 14)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOSEPH THOMPSON, | |
| Plaintiff, | Civil No. 15-2031 |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Joseph Thompson's ("Mr. Thompson") appeal of the final determination of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Mr. Thompson's application for disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the Court will affirm the Commissioner's decision.

**I.     BACKGROUND**

On April 17, 2013, Mr. Thompson filed a claim for disability insurance benefits ("DIB") for disabilities arising out of his organic mental disorder, anxiety-related disorder, personality disorder, substance abuse disorder, status post-arthroscopy of the left shoulder, and degenerative disc disease of the cervical spine. (Admin. Rec. ("Rec.") at 24.) Mr. Thompson asserts that these alleged disabilities have left him unable to work since December 1, 2012. The Commissioner first denied Mr. Thompson's claim on July 9, 2013 and again upon reconsideration on August 30, 2013. (Id. at 90–94, 96–101.) Mr. Thompson next filed a written

request for a hearing on September 20, 2013, which was held on April 10, 2014. (Id. at 37–61, 102–03.) The Administrative Law Judge ("ALJ") denied Mr. Thompson's claim on July 3, 2014. (Id. at 24–33.) On January 20, 2015, the Social Security Appeals Council denied Plaintiff's request for review, and the ALJ's determination became the final decision of the Commissioner. (Id. at 3–8.) Mr. Thompson now seeks judicial review from this Court pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's decision, Mr. Thompson was 52 years old. (Id. at 41.) From 1997 to 2007, Mr. Thompson worked full time in a manufacturing factory, where he unloaded inventory from trucks, pulled orders, and stocked shelves. (Id. at 191.) The job required him to be on his feet all day and frequently lift up to twenty-five pounds of weight, sometimes lifting up to one-hundred pounds or more. (Id. at 192.) From 2007 to 2012, Mr. Thompson worked for PepsiCo, where he loaded and unloaded trucks, used machinery such as a power jack and forklift to stock shelves, and cleaned the warehouse. (Id. at 191, 193.) This job was also a physical one: Mr. Thompson was on his feet for up to six hours a day and had to frequently crouch or stoop down. (Id. at 193.) He frequently lifted up to twenty-five pounds of weight and was occasionally required to lift up to fifty pounds. Mr. Thompson left his position with PepsiCo on May 26, 2012[1] after his position was terminated because of company restructuring. (Id. at 176.) Although Mr. Thompson received unemployment benefits for 2013, he seeks DIB beginning December 1, 2012. (Id. at 40.)

---

[1] The Record is inconsistent as far as the precise date Mr. Thompson ceased working at PepsiCo. His application for benefits provides that he stopped working on May 26, 2012, but he testified at his administrative hearing that he stopped working in March of 2012. This inconsistency is immaterial for purposes of this appeal.

2

Because of the nature of Mr. Thompson's arguments in support of his appeal, an extensive review of his medical history is unnecessary. It is sufficient to state that Mr. Thompson has physical impairments, namely status post arthroscopy of the left shoulder and degenerative disc disease of the cervical spine, as well as multiple mental impairments, including organic mental disorder, anxiety-related disorder, personality disorder, and substance abuse disorder. (Id. at 26.)

## II.   LEGAL STANDARDS

### A. Standard of Review

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d. Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision even if the court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

Nevertheless, the reviewing court must be wary of treating "the existence [or nonexistence] of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.3d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284−85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir.

1978)).  Furthermore, evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d at 114).  As such, a district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." Kent, 710 F.2d at 114.

### B. The Five-Step Disability Inquiry

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled and therefore eligible for benefits.  20 C.F.R. § 404.1520(a)(4); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence.  Zirnsak, 777 F.3d at 611−12.  At step one, the Commissioner evaluates whether the claimant is currently engaging in any "substantial gainful activity." See 20 C.F.R. § 404.1520(a)(4)(i) (explaining the first step); id. § 404.1572 (defining "substantial gainful activity").  Such work activity bars the receipt of benefits. Id.  At step two, the claimant must show that he has a "severe medically determinable physical or mental impairment" that lasted for a continuous period of at least twelve months. See id. § 404.1520(a)(4)(ii) (explaining the second step); id. § 404.1509 (setting forth the duration requirement).  The claimant is not disabled if either his impairment is not severe or if it does not satisfy the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the Commissioner evaluates whether the claimant's condition meets or equals one of the Commissioner's listed impairments. See id. § 404.1520(a)(4)(iii) (explaining the third step); see also id. Subpt. P., App'x 1 (listing the impairments).   If it does, the claimant is disabled and entitled to benefits.  20 C.F.R. § 404.1520(a)(4)(iii).  If not, the Commissioner's inquiry

proceeds to step four, where the Commissioner evaluates "whether the claimant can return to her past work." Id. § 404.1520(a)(4)(iv). This evaluation requires the Commissioner to assess the claimant's residual function capacity ("RFC"), which "measures the most [he] can do despite [his] limitations." Zirnsak, 777 F.3d at 611 (internal quotation marks omitted); see also 20 C.F.R. § 404.1520(a)(4)(iv) (explaining the fourth step); id. § 404.1520(e) (same). The claimant is not disabled if he can still perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv).

If the claimant meets his burden at steps one through four, then the burden shifts to the Commissioner at the fifth and final step. Zirnsak, 777 F.3d at 612. At this stage, the Commissioner evaluates whether the claimant can adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v) (explaining the fifth step). If the claimant is capable of performing other work available in significant numbers in the national economy, based on the claimant's RFC, age, education, and work experience, the claimant is not disabled. Id. If the claimant cannot make "an adjustment to other work," the claimant is disabled and entitled to benefits. Id.

### III. DISCUSSION

#### A. The ALJ's Decision

Using the five-step evaluation process, the ALJ concluded that Mr. Thompson was not disabled. At step one, the ALJ found that Mr. Thompson had not engaged in substantial gainful activity since December 1, 2012. (Rec. at 26.) At step two, the ALJ found that Mr. Thompson had severe impairments including an organic mental disorder, anxiety-related disorder, personality disorder, substance abuse disorder, status post arthroscopy of the left shoulder, and degenerative disc disease of the cervical spine. (Id.) At step three, the ALJ found that Mr. Thompson's physical and mental impairments, when considered both in combination and independent from one another, did not meet or equal the listed impairments. (Id. at 27–28.) In so

5

finding, the ALJ considered Mr. Thompson's testimony about his ability to perform household chores and to go out in public to shop and function independently. (Id.) The ALJ also considered Mr. Thompson's moderate difficulties with attention and concentration, as reported by Dr. Lazarus, and the testimony of independent medical expert Dr. Joseph Vitolo ("Dr. Vitolo"), who testified that Mr. Thompson's "medical impairments cause mild limitations in activities of daily living and social functioning, and moderate limitations in concentration, persistence, or pace." (Id. at 28.)

Because Mr. Thompson's impairments did not meet or equal one of the listed impairments, the ALJ proceeded to steps four and five of the evaluation process. (Id. at 28.) The ALJ concluded that Mr. Thompson had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b).[2] (Id. at 28.) Specifically, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual function capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for up to one hour at a time and sit for six hours in an eight-hour workday. He can walk up to 30 minutes at a time and stand for two hours in an eight-hour workday. He can walk for up to 15 minutes at a time and walk for two hours in an eight-hour workday. He can climb steps and ladders occasionally. He can bend or stoop occasionally. The claimant is limited to simple, routine tasks with simple instructions. He should have no more than occasional contact with the public, co-workers and supervisors.

---

[2] "Light work" is defined as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity to sit for long periods of time.

20 C.F.R. § 404.1567(b).

(Id. at 28.) In formulating the mental limitations of the RFC, the ALJ considered Mr. Thompson's testimony, which he found "not entirely credible;" Mr. Thompson's medical history and medical records; the treatment notes of Dr. Lazarus; the opinion testimony of Dr. Vitolo; and the determinations of state agency psychologist Dr. Jane Shapiro, and state agency physician Dr. Mary McLarnon. (Id. 29–31.) Ultimately, the ALJ determined that Mr. Thompson's RFC rendered him incapable of returning to his past relevant work as a warehouse worker or cleaner. (Id.)

At step five, the ALJ found that based on Mr. Thompson's "age, education, work experience, and [RFC,] there are jobs that exist in significant numbers in the national economy that [he] can perform." (Id. at 32.) The ALJ relied on the testimony of the vocational expert, who testified that, despite some limitations impeding Mr. Thompson from performing a full range of "light work," when taking into account all factors, Mr. Thompson was capable of performing "representative occupations" such as the light and unskilled occupations of "assembler of electrical accessories," "bottling line attendant," and "assembler of small products." (Id. at 33.) Accordingly, the ALJ denied Mr. Thompson's claim for SSI benefits.

**B. Analysis**

Mr. Thompson raises two arguments in support of his appeal, both of which relate to the ALJ's mental limitations of the RFC. First, Mr. Thompson argues that the ALJ erred by declining to incorporate into his RFC—without explanation—Dr. Vitolo's finding that Mr. Thompson could perform only simple, repetitive tasks with one to two steps. (See Pl.'s Br. 7– 11.) Second, Mr. Thompson argues that the ALJ's RFC determination fails to take into account the ALJ's own finding that Mr. Thompson has "moderate deficiencies of concentration,

persistence, or pace." (Id. at 12.) For the reasons set forth below, both of Mr. Thompson's arguments fail.

### 1. The ALJ's determination that Mr. Thompson has an RFC to perform light work is supported by substantial evidence in the record.

The Court finds that the ALJ's RFC determination was supported by substantial evidence. Although the ALJ gave Dr. Vitolo's opinion "great weight," the ALJ's RFC determination was based on multiple sources of evidence. In pertinent part, the ALJ summarized his RFC determination as follows:

> In sum, the above residual functional capacity is supported by the objective medical evidence of the record, the longitudinal medical treatment history, the course of medical treatment, the claimant's activities of daily living, and the opinion evidence as outlined above. The undersigned finds that the claimant can perform a range of light and unskilled work.

(Rec. 32.) The ALJ was not required to incorporate Dr. Vitolo's one- to two-step limitation even though he otherwise gave Dr. Vitolo's opinion great weight. See Wilkinson v. Comm'r Soc. Sec., 558 Fed. App'x. 254, 256 (3d Cir. 2014) ("As an initial matter, no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."); see also Newsome v. Astrue, No. 11-1141, 2012 WL 2922717, at *6 (S.D. Ill. 2012) ("[T]he fact that he gave 'great weight' to Dr. Naseer's Opinion does not mean that he was required to adopt it wholesale.").

The ALJ specifically addressed Dr. Vitolo's medical opinion, but also took into account other evidence which supported the ALJ's ultimate conclusion that Mr. Thompson had the RFC to perform "simple, routine tasks with simple instructions." (Rec. at 28.) The ALJ found that the medical record did not support Mr. Thompson's allegations of mental impairments, particularly because there "is no evidence that the claimant sought treatment with a mental health

professional since the alleged onset date." (Id. at 30.) He took into account Dr. Lazarus's consultative examination, which reported that Mr. Thompson was not under any mental health treatment, helped his wife with daily activities around the house, and actively used the computer to search for work. (Id.) He also considered the opinion evidence of State agency psychologist Dr. Shapiro, who concluded that Mr. Thompson could "attend, concentrate and complete routine tasks." (Id. at 31.) Dr. Shapiro's conclusions were confirmed by Dr. Yared, who found that Mr. Thompson "can understand, remember, and execute simple routine instructions, can sustain concentration, persistence, and pace, can adapt, and can socially interact." (Id.) This evidence factored into the ALJ's RFC determination despite the fact that he gave it less weight than Dr. Vitolo's opinion.

Mr. Thompson also argues that the ALJ's alleged error was not harmless error because such a limitation would have precluded him from performing the jobs named by the vocational expert. (See Pl.'s Br. 10–12.) The Court disagrees. Even if the ALJ was required to either incorporate or reject with explanation Dr. Vitolo's one- to two-step limitation, any failure to do so was inconsequential because the jobs proffered by the vocational expert are not inconsistent with a one- to two- step limitation. The "bottling-line attendant" occupation has a Level 1 reasoning level, which requires individuals to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." See DICOT 920.687-042, 1991 WL 687791 (emphasis added). The occupations of electrical accessories assembler and small products assembler have reasoning levels of 2.[3] See DICOT 729.687-010, 1991 WL 679733 (assembler, electrical accessories); DICOT 706.684-022, 1991 WL 679050 (assembler, small products). Courts have

---

[3] A reasoning level of 2 requires workers to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "deal with problems involving a few concrete variables in or from standardized situations." See DICOT, App'x C, 1991 WL 688702.

found occupations with a reasoning level of 2 as consistent with a one- to two-step limitation on RFC.  See Thompson v. Astrue, 07-2989, 2009 WL 7007996, at *12 (E.D. Pa. Jan. 30, 2009) (holding that a limitation to tasks of one- to two-steps did not limit the claimant to jobs with a reasoning level of 1); see also Mathis v. Astrue, No. 3:07-CV-131 (CDL), 2008 WL 4849028, at *4 (M.D. Ga. Nov. 6, 2008) (finding that the claimant with an RFC limitation of one- to two-step instructions was capable of performing work with reasoning at level 2); Harrington v. Comm'r, No. 07-1330, 2008 WL 4492614, at *10 (S.D. Cal. Sept. 29, 2008) (same).  As such, even if the ALJ erred in either failing to incorporate or expressly reject the one- to two-step limitation, his error is harmless because he ultimately found Mr. Thompson capable of performing jobs that are ultimately consistent with a one- to two-step limitation.

### 2. The ALJ's RFC determination accounts for the ALJ's finding that Mr. Thompson has moderate deficiencies in concentration, persistence, and pace.

As indicated supra, Mr. Thompson argues that the ALJ failed to address in his RFC determination his own finding in step three that Mr. Thompson has "moderate difficulties" with "concentration, persistence or pace."[4]  (Pl.'s Br. 12.)  Incorporating this finding into the RFC, the ALJ found that Mr. Thompson is "limited to simple, routine tasks with simple instructions.  He should have no more than occasional contact with the public, co-workers and supervisors."  (Rec. at 28.)  The ALJ posed this same hypothetical to the vocational expert.  (See id. at 57–58.)

Mr. Thompson relies on the Third Circuit's decision in Ramirez v. Barnhart, 372 F.3d 546, 549 (3d Cir. 2004), in support of his position.  In Ramirez, the Third Circuit reiterated that a

---

[4] A claimant's mental impairments are evaluated in four broad areas of functioning:  "(1) activities of daily living, (2) social functioning, (3), concentration, persistence, or pace, and (4) deterioration or decompensation in work or work-like settings."  Ramirez v. Barnhart, 372 F.3d 546, 549 (3d Cir. 2004) (citing 20 C.F.R. § 416.920a (1999)).

hypothetical question asked of the vocational expert "must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Id. at 552 (quoting Chrupcala v. Heckler, 829 F.3d 1269, 1276 (3d Cir. 1987)).  The Ramirez court found that a limitation of "no more than simple one or two-step tasks" did not sufficiently account for the ALJ's finding that the claimant "often" had deficiencies in concentration, persistence, or pace. Id. at 554.

However, on a later occasion, a Third Circuit panel in a non-precedential opinion found that a limitation to "simple, routine tasks" adequately encompassed a finding that the claimant had moderate difficulties in concentration, persistence, or pace. McDonald v. Astrue, 293 Fed. App'x 941, 946 (3d Cir. 2008).  In so holding, the McDonald court squarely distinguished McDonald from Ramirez, noting that having moderate difficulties with concentration, persistence, and pace, is different from having those difficulties often.  Id. at 946 n.10.[5]  Other courts of this district have followed McDonald's reasoning.  See, e.g., Pidgeon v. Colvin, No. 15-2897, 2016 WL 2647666, at *13 n.10 (D.N.J. May 9, 2016); Beattie v. Colvin, Civ. No. 15-235 (WJM), 2016 WL 347313, at *4 (D.N.J. 28, 2016), appeal docketed sub nom. Beattie v. Comm'r Soc. Sec., No. 16-1686 (3d Cir. filed Mar. 23, 2016); Winters v. Comm'r of Soc. Sec., Civ. No. 15-1357 (KM), 2015 WL 8489958, at *10 (D.N.J. Dec. 9, 2015); Padilla v. Astrue, Civ.

---

[5] The Court recognizes that some district courts have questioned McDonald on grounds that it fails to address the change from the frequency scale's "never, seldom, often, frequent, constant" to the severity scale's "none, mild, moderate, marked, and severe,"which occurred between Ramirez and McDonald.  See Gray v. Colvin, 13-01944, 2014 WL 4536552, at *15 (M.D. Pa. Sept. 11, 2014) (rejecting McDonald, in part, because of this change); see also Jury v. Colvin, No. 12-cv-2002, 2014 WL 1028439, at *11 n.21 (M.D. Pa. Mar. 14, 2014) (listing cases making this distinction).  However, other courts have found this distinction is not dispositive. See, e.g., Pidgeon v. Colvin, No. 15-2897, 2016 WL 2647666, at *13 n.10 (D.N.J. May 9, 2016) (finding that the "simple, routine" tasks language sufficient to encompass the plaintiff's limitation despite this distinction between the frequency scale and severity scale).

No. 10-4698 (ES), 2011 WL 6393248, at *10 (D.N.J. Dec. 15, 2011).  This Court sees no reason to disregard the Third Circuit's distinction, particularly in light of ample evidence in the Record supporting the ALJ's finding that Mr. Thompson is capable of performing simple, routine tasks with simple instructions.  As such, the Court finds no error with the ALJ's incorporation of Mr. Thompson's mental limitations into his RFC.

## IV. CONCLUSION

For the reasons discussed above, the decision of the Commissioner is **AFFIRMED**.

Dated: 05/23/2016                                          s/Robert B. Kugler
                                                          ROBERT B. KUGLER